UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ODELL HOBBS, an individual,

    Plaintiff,

v.

CITY OF EDMONDS, a Washington municipal corporation,

    Defendant.

Case No. 17-753RSM

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendant City of Edmonds' Motions for Summary Judgment. Dkt. #10. Edmonds argues that all of Plaintiff Odell Hobbs' claims fail for procedural and substantive reasons, and that there is no question of material fact. Mr. Hobbs has failed to oppose this Motion. For the reasons set forth below, the Court GRANTS Defendant's Motion and dismisses all of Plaintiff's claims.

## I.     BACKGROUND

Mr. Hobbs is the owner of a residence at 22514 93rd Place West, in the City of Edmonds. Dkt. #1 ("Complaint") at ¶ 10. In November 2014, the residence was damaged by fire. Complaint at ¶ 11.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

Under the Edmonds City Code, if a nonconforming building or structure is destroyed or damaged in an amount less than 75% of the building's replacement cost at the time of destruction, the structure may be repaired, and the building can be returned to its former size, shape, and lot location as existed before the damage occurred. ECDC 17.40.020(F); *see* Dkt #12-1. If, however, the cost of the repairs exceeds 75% of the building's replacement cost at the time of destruction, it is deemed a "new structure" and must be constructed in full conformance with existing building regulations. *Id.*

On January 11, 2016, Mr. Hobbs submitted a permit application with the City. Dkt. #11 ("Bjorback Decl.") ¶ 4, Ex. A. On it, Mr. Hobbs' developer stated that the scope of work was limited to "Fire repair. Increasing roof pitch to accept comp shingles." *Id.* The developer estimated the project's value at $150,000—below the 75% threshold for a new structure. *Id.*

Edmonds then granted a building permit for repairs to portions of Mr. Hobbs house that were damaged by the fire. Bjorback Decl. at ¶ 5, Ex. B. This permit states that "ALL WORK [IS] SUBJECT TO FIELD INSPECTION FOR CODE COMPLIANCE," and that all changes in plans and field modifications must be approved. *See id.* The goes on:

> Nothing in this permit approval process shall be interpreted as allowing or permitting the maintenance of any currently existing illegal, nonconforming, or unpermitted building, structure, or site condition which is outside the scope of the permit application, regardless of whether such building, structure, or condition is shown on the site plan or drawing. Such building, structure, or condition may be the subject of a separate enforcement action.

*Id.*

On March 16, 2016, upon inspection, Edmonds building inspectors noted an apparent violation of the City's building codes. *See id.* Mr. Hobbs' contractor had significantly exceeded the amount of demolition allowed by the permit drawings. A Correction Notice was

provided, which gave Mr. Hobbs an opportunity to either revise his plans, or demonstrate his compliance with the existing ones. Bjorback Decl. at ¶ 8, Ex. C.

The contractor submitted revised plans and a construction estimate to the City of Edmonds. Bjorback Decl. ¶ 9, Ex. D–E. Pursuant to ECDC 17.40.020, the Building Official evaluated the updated construction estimate—consistent with national standards, as well as his own past practice—to assess whether the level of demolition of the house exceeded 75% of the replacement cost of the original house. Bjorback Decl. ¶ 13. And it turned out that the extent of demolition/removal, based upon the information provided, was approximately 84.7%. Bjorback Decl. ¶ 13. This was explained by correspondence and over the phone. *See id*.

Despite several requests, neither Mr. Hobbs nor his contractor provided the City with the revised construction estimate. *See* Bjorback Decl. ¶¶ 10–12. The City's Building Official made several attempts to explain the City's Development Code to Mr. Hobbs in order to move the construction project forward. *See id.*; Ex. F–G.

A letter was sent to Mr. Hobbs expressing Edmonds' intent to revoke his permit. Bjorback Decl. ¶ 14, Ex. H. It explained that the demolition exceeded what the City's Development Code would allow, thus, any proposed construction from that point forward would be considered "New Single Family" construction and would require a new building permit and be subject to all applicable requirements for a new structure. *See id.* In order to assist and expedite Mr. Hobbs through the review process, Edmonds offered to meet with him and his contractor in order to discuss compliance issues that needed to be resolved in order to move forward with the project. *See id*. Significantly, this letter closed with the following language:

> If you do not contact [the City of Edmonds] by July 15, 2016, you will have waived your opportunity for a pre-deprivation hearing

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

> and to challenge [the City's] initial determination that you have reached the 75% threshold… Please feel free to contact me with any questions.

*Id.* Edmonds did not receive a request, or response of any kind. *See* Bjorback Decl. ¶ 15.

On July 29, 2016, the Building Official sent plaintiff a Notice of Building Permit Revocation, with another opportunity to appeal within the City's administrative structure. Bjorback Decl. ¶ 16, Ex. I. Plaintiff did not appeal that determination, either; nor did he seek any relief related to the Land Use Decision in Superior Court. Bjorback Decl. ¶ 17.

Mr. Hobbs filed this suit on May 15, 2017, alleging race discrimination under 42 U.S.C. §1981, violations of due process and equal protection under the Fourteenth Amendment, violation of the Civil Rights Act Title VI, and a claim for common law intentional interference with economic relations. Dkt. #1. Mr. Hobbs seeks $1,750,000 in economic, non-economic, and punitive damages. *Id.* The City of Edmonds filed the instant Motion for Summary Judgment on January 4, 2018. Dkt. #10.

## II.  DISCUSSION

**A. Legal Standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 251.

**B. Analysis**

The Court has reviewed the facts as stated above, submitted by the City of Edmonds and substantiated by attached declarations and exhibits. Unfortunately, Mr. Hobbs has failed to respond to the instant Motion, or otherwise submit evidence. The record does not support any of his claims. Mr. Hobbs cannot simply rest on the accusations in his Complaint, he must instead make a sufficient showing on the elements of his case. *Celotex, supra*; Rule 56(e). From the information before the Court, it is clear that Mr. Hobbs did not follow the legally valid building permit process as set forth in the City's code. The City has the right to enforce local building regulations, and there is no evidence that Mr. Hobbs constitutional rights were trampled upon, or that race played a factor in the denial of his building permit. Accordingly, all of his claims are properly dismissed on summary judgment. *See Snoqualmie Indian Tribe v. City of Snoqualmie,* 186 F. Supp. 3d 1155, 1162 (W.D. Wash. 2016) (setting forth standard for racial discrimination claim); *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S. Ct. 2701

(1972) (setting forth standard for due process claim); *Larez v. City of L.A.*, 946 F.2d 630, 646–47 (9th Cir. 1991) (setting forth standard for equal protection claim); *Mason v. Washington State*, No. C17-186 TSZ, 2017 WL 2559621, at *3 (W.D. Wash. June 13, 2017) (setting forth standard for Title VI claim); *Leingang v. Pierce Cty. Med. Bureau, Inc.*, 131 Wn.2d 133, 157, 930 P.2d 288 (1997) (setting forth standard for intentional interference with economic relations claim).

### III. CONCLUSION

Having reviewed the relevant briefing, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

1) Defendant City of Edmonds' Motions for Summary Judgment (Dkt. #10) is GRANTED. All of Plaintiff's claims are DISMISSED.

2) This case is CLOSED.

DATED this 5 day of February, 2018.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE